# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

BOBBI SIMMONS                                                    PLAINTIFF

V.                      CASE NO. 3:17-CV-00287 JTK

SOCIAL SECURITY ADMINISTRATION                                   DEFENDANT

## ORDER

**I.  Introduction:**

Plaintiff, Bobbi Jean Simmons ("Simmons"), applied for disability benefits on April 13, 2016, alleging a disability onset date of August 19, 2015. (Tr. at 16). After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application. (Tr. at 25). The Appeals Council denied her request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Simmons has requested judicial review.

For the reasons stated below, the Court[1] reverses the ALJ's decision and remands for further review.

**II.  The Commissioner's Decision:**

The ALJ found that Simmons had not engaged in substantial gainful activity since the alleged onset date of August 19, 2015. (Tr. at 18). The ALJ found, at Step Two of the sequential five-step analysis, that Simmons has the following severe impairments: osteoarthritis of the knee, asthma, and myasthenia gravis. *Id*.

At Step Three, the ALJ determined that Simmons's impairments did not meet or equal a listed impairment. (Tr. at 19). Before proceeding to Step Four, the ALJ determined that Simmons

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

had the residual functional capacity ("RFC") to perform light work except that: 1) she can only occasionally kneel, crouch, and crawl; 2) she cannot perform lower extremity foot control operations; 3) she cannot climb ladders, ropes, or scaffolds; 4) she should be allowed to sit and stand at will while performing work duties; 5) she should be allowed to use a cane as necessary to access the work station area on level ground; and 6) she should have no concentrated exposure to fumes, odors, and gases. (Tr. at 19).

The ALJ found Simmons was capable of performing past relevant work as an apartment manager. (Tr. at 23). In the alternative, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, based on Simmons's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Simmons is capable of performing. (Tr. at 24). Based on that determination, the ALJ held that Simmons was not disabled. *Id.*

### III. Discussion:

#### A. Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In other words, it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* (citation omitted). The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

B.  Simmons's Arguments on Appeal

Simmons argues that substantial evidence does not support the ALJ's decision to deny benefits. She contends that: 1) the ALJ erred in his RFC determination; and 2) the ALJ should have given more weight to the opinion of Ronald Hollis, M.D., Simmons' treating doctor. The Court agrees with Simmons and finds that remand is proper.

Simmons focuses her argument on her knee condition. She had a left patella dislocation in 1992 and underwent a placement of two screws in April 2006. (Tr. at 334-339). In February 2014, Timothy Krahn, M.D., an orthopedist, saw Simmons for chronic pain and discomfort in the left knee, which was worsening to the point of affecting her everyday activities. (Tr. at 435-440). An x-ray revealed severe arthritis in the knee with bone-to-bone contact. *Id*. Dr. Krahn diagnosed advanced degenerative arthritis with mild extensor lag. *Id*. Dr. Krahn said "there is no question she has advanced patellofemoral arthritis which obviously cannot be cured with any type of arthroscopic procedure." (Tr. at 436). He said knee replacement was not advisable because of Simmons' young age. (Tr. at 435-436).

In December 2013, Simmons began treating with Dr. Hollis for left knee osteoarthritis. (Tr. at 462-465). He prescribed narcotic pain medications. *Id*. A nerve conduction study in April 2015 revealed moderate sensory polyneuropathy in the lower extremities. (Tr. at 416). Also in April 2015, Dr. Hollis read an x-ray of the knee and diagnosed Simmons with advanced degenerative changes with possible new fractures. (Tr. at 446-451). He prescribed crutches and pain management. *Id*. In April 2015, Dr. Krahn placed Simmons in a knee immobilizer because of a distal pole patellar fracture. (Tr. at 434). In June 2015, Dr. Krahn found weakness in the left knee and put Simmons in a drop-lock knee brace and recommended physical therapy. (Tr. at 432).

Simmons reported to Dr. Hollis in January 2016 that she had severe difficulty walking and all-over body pain. (Tr. at 442-450). He continued her on pain medication, and he started her on prednisone in June 2016. (Tr. at 452-461). In December 2016, Simmons returned to Dr. Hollis for continued knee pain. (Tr. at 604).

Dr. Hollis completed a medical source statement in January 2017, saying that Simmons would be limited to lifting and carrying less than 10 pounds, she could stand and walk for less than two hours, and she could sit for a maximum of four hours during the workday. (Tr. at 600-601). Dr. Hollis said Simmons would need frequent breaks (the state-agency consulting doctor said the same thing), and she would need to shift position at will. *Id.*, (Tr. at 614). Dr. Hollis said Simmons would miss more than three days of work per month. *Id.* In February 2017, Dr. Hollis referred Simmons to an orthopedist. (Tr. at 606).

On March 25, 2016, state-agency medical examiner Kwan Park, M.D., an orthopedist, found intra-articular pathology in the right hip, with a decreased range of motion in the left lower extremity. (Tr. at 612-618). Simmons had positive crepitus, positive grind test, and tenderness in the knee joint. *Id.* Dr. Park diagnosed chronic knee and hip pain, among other things. *Id.* He concluded that Simmons could stand, sit, and walk for a full workday with frequent breaks, and that she should avoid kneeling or squatting. *Id.* He noted it was medically necessary for her to use a cane. *Id.*

The ALJ gave partial weight to Dr. Hollis' opinion, and partial weight to Dr. Park's opinion. (Tr. at 22-23). A treating physician's opinion should be granted controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *Miller v. Colvin*, 784 F.3d 472, 477

4

(8th Cir. 2015). The opinion of a treating physician, however, does not automatically control; nor does it eliminate the need to evaluate the record as a whole. *Id*. When declining to give a treating source's opinion controlling weight, an ALJ still must consider the opinion. 20 C.F.R. § 416.927(c). Specifically, the ALJ should consider: 1) the length of the treatment relationship and frequency of examination; 2) the nature and extent of the treatment relationship; 3) the extent of relevant evidence supporting and explaining the opinion; 4) the consistency of the opinion with the record as a whole; 5) whether the treating source is a specialist; and 6) other factors which support or contradict the opinion. *Id*.

The ALJ did not mention the portion of the opinions of Dr. Hollis and Dr. Park that said Simmons needed to take frequent breaks. Since both doctors were in agreement, it was necessary for the ALJ to at least discuss that limitation. Also, Dr. Hollis treated Simmons for years and consulted x-rays several times to diagnose severe knee pain, so his consistent treatment should have been given more weight. His opinion was supported by specialists' reports and objective testing. Moreover, Dr. Park's opinion that Simmons could perform light work, upon which the ALJ relied, was inconsistent with her severe condition and the aggressive treatment with narcotics, steroids, and orthopedic aides (knee immobilizer, drop-lock brace, and cane). Physician opinions that are internally inconsistent are entitled to less deference than they would receive in the absence of inconsistencies." *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005). As Simmons points out, the RFC did not include the use of a cane *at all times*, like the doctors suggested, but limited the use of a cane to accessing a work station on level ground. (Tr. at 19). It seems that the ALJ cherry-picked the opinion evidence in order to support his RFC determination, which is impermissible.

5

In discussing medical records, the ALJ failed to mention marked degenerative changes and soft tissue swelling on a 2016 knee x-ray. (Tr. at 21, 593). He also failed to mention that Simmons had an antalgic gait and walked with a cane at her consultative examination. (Tr. at 21, 614). And he failed to mention narrowing of medial and lateral joint space and patellofemoral sclerosis from a 2017 knee x-ray. (Tr. at 21, 637).

The ALJ also misrepresented Simmons' ability to perform activities of daily living. He said she was independent in grooming, could drive, did household chores, and took care of her three-year old child. (Tr. at 21). In fact, Simmons testified that she had problems doing all of these things, had to take frequent breaks when doing chores, and needed her sister's help with her child. (Tr. at 41-43, 52-54).

The ALJ relied on the fact that Simmons could still work part-time to support his decision that she was not disabled. (Tr. at 21). First, the fact that a claimant does her best to engage in ordinary life activities may not be consistent with complaints of severe pain, and in no way directs a finding that the claimant is able to engage in light work. *See Draper v. Barnhart*, 425 F.3d 1127, 1131 (8th Cir. 2005). Second, Simmons testified at the hearing that she had missed work three times in the prior month and her employer accommodated her needs related to her severe knee pain. (Tr. at 46-47). She said she could not continue to work if business picked up at her job. *Id*.

The ALJ did not properly credit the medical opinions, objective testing, and Simmons' reports of daily activities in making his RFC determination, so his decision is contrary to the evidence of record.

### IV. <u>Conclusion</u>:

For the reasons stated above, the Court finds that the ALJ's decision is not supported by

substantial evidence. The ALJ did not give proper weight to the medical opinions and the RFC did not incorporate all of Simmons' limitations. The decision is hereby reversed and the case remanded with instructions for further review.

IT IS SO ORDERED this 11th day of October, 2018.

_____
UNITED STATES MAGISTRATE JUDGE